UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

BARBARA BOWEN AND LORRAINE COHEN,

                        Plaintiffs,

     -against-                                  CV-07-10997 (RMB)

MATTHEW GOLDSTEIN IN HIS OFFICIAL
CAPACITY AS CHANCELLOR OF THE CITY
UNIVERSITY OF NEW YORK, GAIL MELLOW IN
HER OFFICIAL CAPACITY AS PRESIDENT OF
LAGUARDIA COMMUNITY COLLEGE; AND
FREDERICK SCHAFFER, IN HIS OFFICIAL
CAPACITY AS VICE CHANCELLOR OF LEGAL
AFFAIRS OF THE CITY UNIVERSITY OF NEW
YORK,

                        Defendants.

------------------------------------------------------------x

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

### PRELIMINARY STATEMENT

Defendants submit this memorandum of law in opposition to plaintiffs' motion for a preliminary injunction. The Court is respectfully referred to the accompanying Declaration of Frederick P. Schaffer for the facts.

Plaintiffs Barbara Bowen and Lorraine Cohen are union officials of the Professional Staff Congress/City University of New York ("PSC"), which is currently negotiating a new collective bargaining agreement with the City University of New York ("CUNY"). In a transparent end run around the collective bargaining process, plaintiffs have commenced this action and moved

for a preliminary injunction seeking a privilege -- use of the email system of LaGuardia Community College ("LaGuardia") for the purpose of conducting official union business -- that should be a topic for collective bargaining. However, rather than engage in good faith negotiations, plaintiffs seek Court relief, claiming, in effect, that they have an absolute constitutional right to use the internal LaGuardia email system for official union business.

Plaintiffs are mistaken as a matter of law, and for the reasons set forth below, their motion should be denied. Precedent from the United States Supreme Court and the Second Circuit, which plaintiffs fail to address in their moving papers, make clear that the First Amendment to the United States Constitution is not violated when a union is not allowed use of an internal communication system used in a public school system. Thus, plaintiffs' motion, which is predicated upon claims of a supposed violation of the First Amendment is without merit. If plaintiffs wish to use LaGuardia's email system for official union business, they have every opportunity to seek this privilege through the collective bargaining process. Plaintiffs' attempt to gain this privilege, without engaging in collective bargaining and through a preliminary injunction, is a patent misuse of the judicial system.

## ARGUMENT

### Standard for Granting a Preliminary Injunction

"Preliminary injunctive relief is an extraordinary remedy and should not be routinely granted." Patton v. Dole, 806 F.2d 24, 28 (2d Cir. 1986). As a general matter, courts are reluctant to utilize this extraordinary remedy which should be granted only in rare circumstances. Medical Society v. Toia, 560 F.2d 535, 538 (2d Cir. 1977); Romm Art Creations Ltd. v. Simcha Intern., Inc. v. Bryan, 784 F.Supp. 1126 (E.D.N.Y. 1992). The burden of persuasion is on the movant who must make a "clear showing" of entitlement to relief in order to carry that burden. See Mazurek v. Armstrong, 520 U.S. 968 (1997).

To obtain a preliminary injunction, a plaintiff must show: (1) that it will be irreparably harmed if the injunction is not granted; and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of the claims to make them a fair ground of litigation, and a balance of hardships tipping decidedly in its favor. Forest City Daly Hous., Inc. v. Town of North Hempstead, 175 F.3d 144, 149 (2d Cir. 1999); Time Warner Cable v. Bloomberg L.P., 118 F.3d 917, 923 (2d Cir. 1997) (citing Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979). When a party seeks to enjoin government action, it may not rely on the less rigorous "serious questions" alternative of the second prong, but instead must demonstrate a likelihood of success on the merits. See Time Warner Cable, supra, 118 F.3d at 923 (noting that the heightened standard applies "where the injunction stays governmental action taken in the public interest pursuant to a statutory ... scheme") (internal quotations and citation omitted); Berry v City of New York, 97 F.3d 689, 694 (2d Cir. 1996); Able v United States, 44 F.3d 128, 131 (2d Cir. 1995).

Injunctive relief is not appropriate in this case because plaintiffs herein cannot establish any of the elements necessary issue such relief.

### POINT I

**PLAINTIFFS CANNOT DEMONSTRATE THAT THEY WILL SUFFER IRREPARABLE HARM IF THE INJUNCTION IS NOT GRANTED PARTICULARLY SINCE THERE IS NO FIRST AMENDMENT VIOLATION AND THE UNION HAS OTHER WAYS TO COMMUNICATE WITH ITS MEMBERS**

Plaintiffs' claim of irreparable harm is premised on the contention that there would be an "infringement of First Amendment Freedoms" if their union is unable to use LaGuardia's internal email system for official union business. See Plts' Mem. at p. 6. As demonstrated in

Point II, infra, plaintiffs' First Amendment claim is without merit, as a matter of law. Plaintiffs' claim of irreparable harm is also without merit as a matter of fact.

In essence, plaintiffs claim that their union would suffer irreparable harm if it could not use LaGuardia's internal email system because it is a convenient or "uniquely interactive" way for the union to communicate quickly with its members. See Plts' Mem. at p. 7. This is hardly a showing of irreparable harm, particularly since the union has other available means to communicate with its members. When a party seeking injunctive relief has other alternatives available to it for the services that are the subject of the motion, there is no "irreparable harm." Manbeck v. Katonah-Lewisboro School District, 403 F.Supp.2d 281, 284 (S.D.N.Y. 2005) (no showing of irreparable harm arising from denial of school bus service when plaintiffs had alternate means of transportation).

Indeed, plaintiffs fail to mention that their union has its own website (see www.psc-cuny.org) and its own email addresses (see office@psc-cuny.org; communications@psc-cuny.org) that it can use to communicate with its members. Plaintiffs' union also has use of telephones and the mail service. That these various other means of communication may supposedly be less convenient or instantaneous than LaGuardia's internal email system is no basis for a claim of irreparable harm. See Arbitron Co. v. Phoenix Broadcasting Corp., 97 Civ. 4355 (MBM) (HBP), 1997 U.S. Dist. LEXIS 11516 at * 11-13  (S.D.N.Y. Aug. 6, 1997) (in addition to finding no irreparable harm because plaintiff did not explain how available alternatives did not ameliorate alleged harm, court noted that "irreparable harm has not been found when there would be only a partial or temporary disruption of business").

In short, plaintiffs' union would not suffer irreparable harm were injunctive relief denied particularly since alternative methods of communicating with its members are available.

## POINT II

### PLAINTIFFS CANNOT DEMONSTRATE A CLEAR OR SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS BECAUSE THEIR FIRST AMENDMENT CLAIMS FAIL AS A MATTER OF LAW

Both the United States Supreme Court and the Second Circuit have held that public school communication systems are not public fora for purposes of First Amendment analysis. See Perry Education Assoc. v. Perry Local Educators' Association, 460 U.S. 37, 48 (1983) ("[b]ecause the school mail system is not a public forum, the School District had no 'constitutional obligation *per se* to let any organization use the school mail boxes'"), quoting in part, Connecticut State Federation of Teachers v. Board of Ed. Members, 538 F.2d 471, 481 (2d Cir. 1976). Indeed, in Connecticut Federation of Teachers, the Second Circuit declared that "school mailboxes, bulletin boards, and meeting rooms which appellants seek to use . . . are not public fora." Id., 538 F.2d at 480.

In both Perry and Connecticut Federation of Teachers, unions sought access to internal school mail systems, claiming that the denial of access was a violation of the First Amendment. In each case, the Supreme Court and the Second Circuit, respectively, held that there was no violation of the First Amendment. Indeed, in Connecticut Federation of Teachers, the Second Circuit noted that since appellants had other means of communicating with their members, the alleged interference with constitutional rights was *de minimus*. Id., 538 F.2d at 481.

Nevertheless, plaintiffs herein contend that there is a violation of the First Amendment because defendants' email policy is supposedly content based because it allows LaGuardia staff and personnel to send emails "relating to commercial matters, retirement, death and birth announcements, products and services being offered for sale, parties, charitable solicitations, and political issues." Plts' Mem. at p. 10. This is a red herring In Perry, the Supreme Court found

5

that barring plaintiff union from using the school mail system did not violate the First Amendment notwithstanding the union's complaint that "teachers used the mail system to send personal messages, and individual school building principals have allowed delivery of messages from various private organizations." Id., 460 U.S. at 39.

That defendants' email policy is not an improper "content based" restriction is only further demonstrated by Hotel Employees & Restaurant Employees Union v. City of New York Department of Parks & Recreation, 311 F.3d 534 (2d Cir. 2002), a case cited by plaintiffs. See Plts' Mem. at p. 9. In Hotel Employees, the Court found that the plaza in front of Lincoln Center was a "limited" public forum (i.e., a more publicly available forum than non-public fora such as school internal communication systems). Even with respect to a limited public forum, the Second Circuit declared that operating entities are permitted as a matter of law to impose blanket restrictions upon certain types of speech:

> In limited public forum, strict scrutiny is accorded only to restrictions on speech that falls within the designated category for which the forum has been opened. Thus, in a limited public forum, government is free to impose a blanket exclusion on certain types of speech. . . . As to expressive uses not falling within the limited category for which the forum has been opened, restrictions need only be viewpoint neutral and reasonable.

Hotel Employees, 311 F.3d at 545-46 (citations omitted). See also id., 311 F.3d at 553.

This is precisely what defendants herein have done, adopting an email policy imposing a blanket restriction against the use of the LaGuardia email system for official union business. As plaintiffs particularly note, defendants' email policy has been applied not only to plaintiffs' union but also to DC 37. See Plts' Mem. at p. 4. Thus, defendants' email policy is viewpoint neutral and reasonable.

6

Both Perry and Connecticut Federation of Teachers make clear that use of public school internal communication systems for official union business is a matter for collective bargaining, not the Courts. In both cases, the parties bringing suit were rival unions upset that they were excluded from access to school communication systems and allegedly disadvantaged because other unions had gained access to school mail systems through collective bargaining agreements. See, e.g., Connecticut Federation of Teachers, 538 F.2d at 477 (claim that "by granting [the recognized majority union] . . . use of mailboxes, bulletin boards and meeting facilities . . . the respective school boards discriminate against [plaintiff union] in violation of the Equal Protection Clause"); Perry, 460 U.S. at 44 (("primary question presented is whether the First Amendment . . . is violated when a union . . . is granted access to certain means of communication, while such access is denied to a rival union"). In each case, the Supreme Court and the Second Circuit essentially upheld collective bargaining agreements which governed which unions, and the extent to which such unions, would have access to internal school communications systems.[1] This is precisely the avenue available to plaintiffs herein: if they wish to have use of LaGuardia's email system for official union business, they should negotiate for the right to such privileges through the collective bargaining process.

---

[1] That plaintiff's union may have been able to use the LaGuardia email system in the past is reflective of nothing more than the fact that defendants had not previously instituted general policies restricting such use. The fact that plaintiffs' union may thus have previously had the benefit of a "free ride" (and did not previously have to negotiate for such privileges) does not constrain defendants from insisting that plaintiffs' union (and other unions) negotiate to have such privileges for any subsequent periods covered by a new collective bargaining agreement. In fact, in Connecticut Federation of Teachers, the Second Circuit expressly noted that since the school communications facilities "are not ordinarily open to the public, access to them for the purpose of engaging in First Amendment activities may be denied altogether." 538 F.2d at 481. Furthermore, as both Connecticut Federation of Teachers and Perry make clear, union access to school internal communications systems can be a matter for collective bargaining -- and therefore can vary (or be limited) as successive collective bargaining agreements are negotiated.

Quite simply, plaintiffs' complaint herein and motion for a preliminary injunction are reflective of nothing more than the fact that plaintiffs' union has failed to seek through the collective bargaining process access to LaGuardia's email system for official union business. The failure by plaintiffs' union to negotiate for such access, which is clearly a proper subject of collective bargaining, does not, as a matter of law, now give rise to a First Amendment lawsuit by plaintiffs. Plaintiffs' claims herein fail as a matter of law.

## POINT III

### THE BALANCE OF EQUITIES ARE IN DEFENDANTS' FAVOR

To obtain injunctive relief, a plaintiff must show that the harm that it would suffer absent a preliminary injunction is substantially greater than the harm defendants would suffer if the preliminary injunction were granted. See Clemente Global Growth Fund, Inc. v. Pickens, 705 F. Supp. 958, 971 (S.D.N.Y. 1989)(citing Buffalo Forge Co. v. Ampco Pittsburgh Corp., 638 F.2d 568, 569 (2d Cir. 1981). Plaintiffs herein fail to demonstrate that the balance of hardships tips decidedly in their favor.

In both Perry and Connecticut Federation of Teachers, the Courts noted concerns that school internal communications systems not become a "battlefield for inter-union squabbles" (see Perry, 460 U.S. at 52) or a "labor battleground" (see Connecticut, 538 F.2d at 482). Indeed, this Court can take judicial notice that, with the burgeoning use and misuse of email, more and more employers are adopting policies governing and restricting the use of their email systems. These are important concerns.

Although plaintiffs make much of the purported need for their union to use the LaGuardia School internal email system for its own "official communications," the fact is that, to date, the

union has not seen fit to seek such access through collective bargaining. Plaintiffs' union can use the various alternative methods of communicating with its members, until it chooses to negotiate through the collective bargaining process for use of LaGuardia's internal email system for official union business.

In sum, plaintiffs' complaint and their motion for a preliminary injunction are without merit.

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiffs' motion for a preliminary injunction, and grant such other and further relief as the Court deems just and proper.

Dated:     New York, New York
           December 7, 2007

>MICHAEL A. CARDOZO
>Corporation Counsel of the
> City of New York
>Attorney for Defendants
>100 Church Street, Room 2-186
>New York, New York 10007
>(212) 788-0954
>
>By: _____
>      LAWRENCE J. PROFETA (LP-5674)
>      Assistant Corporation Counsel

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2007, I caused to be served on plaintiffs by hand, a true and correct copy of the annexed Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction by causing to be delivered a copy of same to Hanan B. Kolko, Esq., attorney for plaintiffs, at the following address:

>Meyer, Suozzi, English & Klein, P.C.
>1350 Broadway, Suite 501
>New York, New York 10018

this being the address designated by plaintiffs for service.

Dated:   New York, New York
         December 7, 2007

_____
Lawrence J. Profeta