USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____________
DATE FILED: 12/13/07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BARBARA BOWEN and LORRAINE COHEN,

Plaintiffs,

-against-

MATTHEW GOLDSTEIN, in his official capacity as Chancellor of the City University of New York, GAIL MELLOW, in her official capacity as President of LaGuardia Community College, and FREDERICK SCHAFFER, in his official capacity as Vice Chancellor of Legal Affairs of the City University of New York

Defendants.

07 Civ. 10997 (RMB)

**DECISION AND ORDER REGARDING PRELIMINARY INJUNCTION**

## I. Background

On or about December 4, 2007, Barbara Bowen, President of the Professional Staff Congress ("PSC"), the exclusive bargaining representative of 20,000 employees of City University of New York ("CUNY" or "University"), including 1,000 employees of LaGuardia Community College ("LCC"), and Lorraine Cohen ("Cohen"), Chairperson of the PSC Chapter at LCC (together, "Plaintiffs"), filed a complaint, pursuant to 42 U.S.C. §§ 1983 and 1988, against Matthew Goldstein, Chancellor of CUNY, Gail Mellow ("Mellow"), President of LCC, and Frederick Schaffer ("Schaffer"), Vice Chancellor for Legal Affairs of CUNY (collectively, "Defendants"), challenging CUNY's policy of prohibting of the PSC and its members from using LCC's "email system, or other computer resources, to send notice of PSC meetings or to carry out other union business." (See Compl., dated Dec. 4, 2007, ¶¶ 6, 12–17, 28, 37.) Plaintiffs allege, among other things, that Defendants "have violated rights guaranteed to [P]laintiffs by the First and Fourteenth Amendment to the Constitution of the United States of America and Article

I, [section] 8 of the New York State Constitution." (Compl. ¶¶ 33.) On December 4, 2007, Plaintiffs moved by order to show cause for a preliminary injunction and temporary restraining order, pursuant to Rule 65 of the Federal Rules of Civil Procedure, to enjoin Defendants from engaging in "[c]ontent and viewpoint-based [speech] restrictions." (Mem. of Law in Supp. of Pls.' Mot. for a TRO & Prelim. Inj., dated Dec. 4, 2007 ("Pls.' Mem."), at 7, 9; see also Compl. ¶¶ 35, 37, 39.)[1] Plaintiffs allege that "[s]ince no later than 2002, the PSC Chapter at [LCC] has had two [LCC] email accounts and email addresses," and "through October 30, 2007, [Cohen], her predecessors, and others at the PSC have used these email accounts and addresses to communicate with PSC represented employees at [LCC] about the status of CUNY–PSC negotiations [and other union matters]." (Pls.' Mem. at 2.) According to Plaintiffs, before October 29, 2007, no "member of the PSC's Executive Board at [LCC] nor any prior PSC officer at [LCC] ever received any notice from CUNY or [LCC] management stating that [the PSC's] use of the [LCC] email system violated [CUNY's Policy on Acceptable Use of Computer Resources]," but that on October 29, 2007, in a telephone conversation between Mellow and Cohen, Plaintiffs learned that "the PSC would no longer be allowed to use the computer [resources] for union business."[2] (Cohen Aff. ¶ 24.) And, on October 30, 2007, Mellow sent a letter to Cohen, which stated:

---

1 In support of their motion, Plaintiffs submitted affidavits (with exhibits) from Cohen, dated December 4, 2007 ("Cohen Aff."), and from Plaintiffs' counsel, Hanan B. Kolko, dated December 4, 2007.

2 CUNY's Policy on Acceptable Use of Computer Resources, last updated on February 8, 2007 ("Acceptable Use Policy"), states, in pertinent part, that "CUNY's computer resources are dedicated to the support of the [U]niversity's mission of education, research and public service." (Cohen Aff., Ex. B at 1.) "Use of CUNY computer resources is limited to activities relating to the performance by CUNY employees of their duties and responsibilities," and use of CUNY computer resources for "not-for-profit business purposes . . . is prohibited" except for "incidental personal use." (Cohen Aff., Ex. B ¶ 2; see also infra, at 11–12.)

> This fall you [Cohen] have sent several notices relating to PSC meetings via the email system of [LCC]. . . . [S]uch use of the University's computer resources violates the [Acceptable Use] Policy. . . . I am writing to request that you cease using [LCC's] email system, or other computer resources, to send notices of PSC meetings or to carry out other union business.

(Cohen Aff. ¶ 24 & Ex. I at 1.) Cohen acknowledges that she **"understands that [the PSC is] not permitted to use the [LCC email system] for PSC business,"** but, she admits, **"Despite this, I have been using it."**[3] (Cohen Aff. ¶ 27.)

On or about December 7, 2007, Defendants filed a Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction, dated December 7, 2007 ("Defs.' Mem."), arguing, among other things, that Plaintiffs have no right to use LCC's email system for union business, and that Defendants' policy prohibiting such use "is not an improper 'content based' restriction" because "public school communication systems are not public fora for purposes of First Amendment analysis." (Defs.' Mem. at 5.)[4] Defendants contend that the PSC has "every opportunity to seek this [email] privilege through the collective bargaining process." (Defs.' Mem. at 2.) Defendants state that, during the Fall 2006 semester, PSC representatives "communicated their concerns" about establishing "the right of the PSC to use the University's computer resources, including the email system, to communicate with its members and otherwise conduct union business," (Schaffer Decl. ¶ 6), and that, although at that time, "CUNY was unwilling to include such a provision in the [Acceptable Use Policy] . . . [it] would be willing to

---

3 It seems clear that Plaintiffs concede they have no right to use LCC's email system to conduct union business under the Collective Bargaining Agreement governing the relationship between CUNY as the PSC and covering the period November 1, 2002 to September 19, 2007 ("Collective Bargaining Agreement").

CUNY and the PSC began bargaining for a new contract early in 2007, but, to date, a new agreement has not been reached. (See Pls.' Mem. at 1.)

4 Defendants also filed a declaration (with exhibits) from Schaffer, dated December 7, 2007 ("Schaffer Decl."), in opposition to Plaintiffs' motion.

consider a demand by the union to that effect in the next round of collective bargaining (which was less than a year away)." (Schaffer Decl. ¶ 6.) Defendants acknowledge that the PSC "may have been able to use the [LCC] email system in the past" because the PSC had "taken advantage of the lax enforcement" of LCC's email policy prohibiting such use. (Schaffer Decl. ¶ 13.) But, Defendants contend, simply because the PSC "may have previously had the benefit of a 'free ride' (and did not previously have to negotiate for such privileges) does not constrain [D]efendants from insisting that [the PSC] (and other unions) negotiate to have such privileges for any subsequent periods covered by a new collective bargaining agreement." (Defs.' Mem. at 7 n.1.)

The Court did not grant interim relief (temporary restraining order) in this case pending the instant decision on a preliminary injunction. (See Order to Show Cause for Prelim. Inj. & TRO, dated Dec. 4, 2007, at 1–2.) At a conference on December 10, 2007, the parties agreed to resolution by the Court of the motion for a preliminary injunction "on submission." (See Tr. of Proceedings, dated Dec. 10, 2007, at 3:7–13); Drywall Tapers & Pointers, Local 1974 v. Local 530 of Operative Plasterers & Cement Masons, 954 F.2d 69, 77 (2d Cir. 1992) ("When parties are content in the district court to rest on affidavits, the right to an evidentiary hearing is waived.").

**For the reasons set forth below, the Court denies Plaintiffs' motion for a preliminary injunction.**[5]

---

[5] See Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.")

## II. Legal Standard

"To obtain a preliminary injunction the moving party must show, first, irreparable injury, and, second, either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships decidedly tipped in the movant's favor." Green Party of N.Y. State v. N.Y. State Bd. of Elections, 389 F.3d 411, 418 (2d Cir. 2004) (citing Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979) (per curiam)). A "higher standard of proof comes into play when the injunction sought will alter rather than maintain the status quo. In such case, the movant must show a 'clear' or 'substantial' likelihood of success." Bronx Household of Faith v. Bd. of Educ. of the City of New York, 331 F.3d 342, 349 (2d Cir. 2003) (quoting Rodriguez ex rel. Rodriguez v. DeBuono, 175 F.3d 227, 233 (2d Cir. 1999) (per curiam)). "Where a preliminary injunction merely seeks to maintain the status quo prior to an ultimate determination on the merits, the heightened standard of scrutiny will not apply." Brown v. Giuliani, 158 F.R.D. 251, 266 (E.D.N.Y. 1994) (citing Eng v. Smith, 849 F.2d 80, 82 (2d Cir. 1988)). In those cases, "the district court should . . . apply the less rigorous fair-ground-for-litigation standard." Innovative Heath Sys., Inc. v. White Plains, 117 F.3d 37, 43 n.6 (2d Cir. 1997).

"[A] preliminary injunction is an extraordinary remedy that should not be granted as a routine matter." JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 80 (2d Cir. 1990) (citations omitted). And, litigation should not be "used as a bargaining chip in the collective bargaining negotiations; . . . the best course of action would be to resolve the dispute through negotiations." See Nat'l Basketball Ass'n v. Williams, 857 F. Supp. 1069, 1073 (S.D.N.Y. 1994); see also Cleveland Area Local, Am. Postal Workers Union v. U.S. Postal Serv., 968 F. Supp. 1199, 1204 (N.D. Ohio 1997).

## III. Analysis

**No Irreparable Harm**

Plaintiffs argue that "infringement of First Amendment [f]reedoms is irreparable injury," and, absent injunctive relief, the PSC "will lose the ability to engage in the uniquely interactive communications that email provides, and that enables the PSC to communicate quickly to its [LCC] membership on the status of CUNY–PSC negotiations at a critical period." (Pls.' Mem. at 6–7, 16.) Plaintiffs seek to maintain what they refer to as "the status quo pre-October 30, 2007," (Pls.' Mem. at 17), i.e., the date upon which Defendants notified Plaintiffs to "cease using [LCC's] email system, or other computer resources, to send notices of PSC meetings or to carry out other union business."[6] (Cohen Aff., Ex. I.) Defendants counter that Plaintiffs' First Amendment freedoms were not infringed because Plaintiffs have (and had) no right to use LCC's email system and Defendants "had no constitutional obligation per se to let [Defendants] use the [email system]," (Defs.' Mem. at 5 (citations and internal quotations omitted)), in light of the facts, among others, that "[t]he internal mail system, at least by policy, is not held open to the general public," Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 47 (1983), and the PSC "has other available means to communicate with its members." (Defs.' Mem. at 4.) Defendants argue that the status quo is, in fact, that the PSC does not have the right to use the University's computer resources, including the email system, (Schaffer Decl. ¶¶ 6, 13), and would not have such a right unless and until Plaintiffs successfully "negotiate for the right to such privileges through the collective bargaining process." (Defs.' Mem. at 7.)

---

[6] Prior to October 30, 2007, Plaintiffs contend, "the PSC Executive Committee at [LCC] . . . freely used the [LCC email system] to communicate with the PSC membership at LCC." (Cohen Aff. ¶ 13.) Defendants counter that the PSC "may have been able to use the [LCC] email system in the past," but such use was unauthorized. (See Defs.' Mem. at 7 n.1.)

The Court agrees with Defendants (and Plaintiffs appear to concede (see supra, at 3)) that Plaintiffs have no current right under the Collective Bargaining Agreement to use LCC's email system to conduct union business, (see Schaffer Decl. ¶ 6 (One of Defendants' "requests was . . . the right of the PSC to use the . . . email system.")), and that any such use violates Defendants' Acceptable Use Policy (albeit hitherto laxly enforced) prohibiting such use. (See Schaffer Decl. ¶ 13 (The PSC "appears to have[] taken advantage of the lax enforcement by violating [the Acceptable Use Policy].").) Thus, the Court concludes that the standard for analysis of Plaintiffs' application for an injunction is the "more rigorous" standard for a "mandatory injunction, that is, that [the proposed injunction] will alter, rather than maintain, the status quo . . . by commanding some positive act," which in this case would be to change Defendants' policy against email use by Plaintiffs. Nicholson v. Scoppetta, 344 F.3d 154, 165 (2d Cir. 2003) (citations and internal quotations omitted). "Because the preliminary relief arguably alters the status quo by doing more than is required by the [a]greement, it might be considered mandatory." Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 35 (2d Cir. 1995) (citation omitted); see also Appel v. Spiridon, 463 F. Supp. 2d 255, 260–61 (D. Conn. 2006). And, "because the Plaintiffs are seeking an injunction that will affect a government [CUNY] action they must satisfy the more rigorous 'likelihood of success' standard (rather than the 'serious questions' standard)." Fortress Bible Church v. Feiner, No. 03 Civ. 4235, 2004 WL 1179308, at *2 (S.D.N.Y. Mar. 29, 2004).

"[E]ven when a complaint alleges First Amendment injuries, irreparable harm must still be shown—rather than simple presumed—by establishing an actual chilling effect." Bronx Household, 331 F.3d at 349 (citing Latino Officers Ass'n v. Safir, 170 F.3d 167, 171 (2d Cir. 1999)). To establish a cognizable claim founded on the (alleged) chilling of First Amendment

rights, a party must articulate a "specific present objective harm or a threat of specific future harm." Laird v. Tatum, 408 U.S. 1, 14 (1972). The "theoretical possibility of a chilling effect on . . . speech . . . [is] insufficient to establish irreparable harm." Bronx Household, 331 F.3d at 350 (citation omitted). No such present harm exists because, as Defendants argue, the PSC has no "right to use the internal [LCC] email system for official union business," (Defs.' Mem. at 2), and, as Plaintiffs acknowledge, the PSC can (and does) "communicate with the PSC-represented employees at [LCC] in several ways, [including] . . . speak[ing] with people in person [and] . . . communicating with people on the telephone"; (Cohen Aff. ¶ 10), "meet[ing] at the college if appropriate facilities are available"; "us[ing] college mailroom facilities for the distribution of PSC communications"; using two "bulletin boards [exclusively reserved] for the . . . purpose of posting PSC notices"; and using other "existing college bulletin boards customarily used for general notices to Instructional Staff." (Schaffer Decl., Ex. 1 at art. 7, secs. 1–3.)

In a case similar to this one, a federal district court in Minnesota has held that a school district did not deny First Amendment freedoms to a teachers' union by preventing the union from using the school's email system to communicate with its members because "alternative avenues for [p]laintiffs' speech exist[ed] through direct mailing, in-person solicitation, telephone calls, and the like." Educ. Minn. Lakeville v. Indep. Sch. Dist. No. 194, 341 F. Supp. 2d 1070, 1080 (D. Minn. 2004). And, in American Postal Workers Union v. United States Postal Service, the Court of Appeals for the Second Circuit reversed the district court's granting of a preliminary injunction to enjoin an employee's discharge pending arbitration because the discharge would not have a "chilling effect on the [employee's] exercise of . . . [F]irst [A]mendment rights, sufficient to constitute irreparable harm." 766 F.2d 715, 722 (2d Cir. 1985).

Plaintiffs here "have not lost a legal right." See 2284 Corp. v. Shiffrin, 98 F. Supp. 2d 244, 249 (D. Conn. 2000). Plaintiffs' detriment, if any, "is the inability to retain a benefit [use of the email system] that they never should have had in the first place." See id. But, as shown above (at 3), Plaintiffs "understand that [they] are not permitted to use the [email system] for PSC business, (Cohen Aff. ¶ 27), and they "may not now complain that [Defendants] are seeking to enforce regulations which until now went unenforced." See 2284 Corp., 98 F. Supp. 2d at 249; see also NLRB v. Gen. Stencils, Inc., 438 F.2d 894, 901 n.8 (2d Cir. 1971) ("[A]t least one court has held that an employer which, even before recognizing the union, tightened up its policy with respect to making personal loans and issued a written set of working rules (previously in effect but not enforced) did not commit an unfair labor practice in so doing.").

**No Clear or Substantial Likelihood of Success on the Merits**

Plaintiffs argue, among other things, that they are likely to succeed on their First Amendment claim because (i) LCC's email system is a "limited public forum"; (ii) the Defendants' "rule forbidding PSC use of the LCC email system is content and viewpoint-based," and there is "no government interest . . . which justified the restrictions on the PSC's speech"; and (iii) "communications related to the [Collective Bargaining Agreement], the outcome of grievances, and the collective bargaining process are . . . 'official business' of [LCC]." (Pls.' Mem. at 9–11, 14.) Defendants counter, among other things, that (i) LCC's email system is a "non-public forum"; (ii) LCC's email policy is "reasonable" and "viewpoint neutral" and "has been applied not only to [P]laintiffs' union but also to [another union]"; and (iii) the PSC's use of the email system to conduct union business is "a flagrant violation of the . . . explicit ban on the use of CUNY's computer resources for private not-for-profit purposes." (Defs.' Mem. at 5–6; Schaffer Decl. ¶¶ 12, 14.)

Plaintiffs have not shown at this preliminary injunction stage that they are clearly or substantially likely to succeed on the merits of their claims for the reasons that follow. See Dichiara v. Pataki, No. 06 Civ. 6123, 2007 WL 749742, at *3 (E.D.N.Y. Mar. 7, 2007); see also Tom Doherty, 60 F.3d at 35.

**(i) LCC's Email System is a Non-public Forum**

"[S]chool mailboxes, bulletin boards, and meeting rooms . . . are not public fora" because, among other reasons, they are not "available for general public use." Conn. State Fed'n of Teachers v. Bd. of Educ. Members, 538 F.2d 471, 480 (2d Cir. 1976). "Because the school mail system is not a public forum, [defendants] had no 'constitutional obligation per se to let any organization use the school mail boxes.'" Perry, 460 U.S. at 48 (quoting Fed'n of Teachers, 538 F.2d at 481). LCC's email system is not open to the general public and "the First Amendment interests in allowing . . . access to these facilities are 'correspondingly reduced.'" Fed'n of Teachers, 538 F.2d at 481 (quoting Roseman v. Ind. Univ. of Pa., 520 F.2d 1364, 1368 (3d Cir. 1975)). A state actor, such as CUNY, may reserve a non-public forum "for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." Perry, 460 U.S. at 46 (citation omitted). "The First Amendment does not demand unrestricted access to a nonpublic forum merely because use of that forum may be the most efficient means of delivering the speaker's message." Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 809 (1985).

**(ii) LCC's Email Policy is Not Content or Viewpoint Based**

"Implicit in the concept of the non-public forum is the right to make distinctions in access on the basis of subject matter and speaker identity." Perry, 460 U.S. at 49. "The touchstone for

evaluating these distinctions is whether they are reasonable in light of the purpose which the forum at issue serves." Id. (footnote omitted). Although Plaintiffs allege that "[c]ritics of the current elected PSC leadership and PSC policies use [LCC's] email system to criticize PSC policies and leaders," (Pls.' Mem. at 3; see also Cohen Aff. ¶ 22 & Exs. D–G), Defendants point out that "there are other email messages that are complimentary of [Plaintiffs'] leadership as to which CUNY has . . . taken no action," and "CUNY acted not to favor or suppress any point of view but to prevent a union official from conducting union business on its email system in violation of the [email] Policy." (Schaffer Decl. ¶ 14.) There is no proof, at this stage in the litigation, that Defendants "intended to discourage one viewpoint and advance another." Perry, 460 U.S. at 49. Furthermore, the reasonableness of Defendants' prohibition of the PSC's use of the email system is bolstered by the availability of alternative channels for PSC communications, such as telephone conversations, in person meetings at LCC facilities, use of LCC's mailroom facilities, and use of LCC's bulletin boards, among others. (See Schaffer Decl., Ex. 1 at art. 7, secs. 1–3); see also Perry, 460 U.S. at 53; Fed'n of Teachers, 538 F.2d at 481 ("The availability of alternative means of communication is a relevant factor in any case in which First Amendment rights are arrayed against asserted governmental interests.")

**(iii) The PSC Concedes It Violated the Email Policy**

CUNY's Acceptable Use Policy states, among other things, that "CUNY's computer resources are dedicated to the support of the [U]niversity's mission of education, research and public service." (Cohen Aff., Ex. B at 1.) The Acceptable Use Policy also provides that the "[u]se of CUNY computer resources is limited to activities relating to the performance by CUNY employees of their duties and responsibilities" and use of CUNY computer resources for "not-for-profit business purposes . . . is prohibited" except for "incidental personal use." (Cohen

Aff., Ex. B ¶ 2.) The PSC's communication with its members is not official business of the University, but rather is the business of the union. See Perry, 460 U.S. at 50 n.10 (The union "has official duties as representative of [the] teachers," and its "communications . . . pertain to the 'official business' of the organization."). Plaintiffs specifically concede that they "are not permitted to use [LCC's email system] for PSC business," but "[d]espite this [understanding] . . . have been using it." (Cohen Aff. ¶ 27; see also supra, at 3.)

**State Law Claims**

Plaintiffs also have stated a free speech claim under Article I, section 8 of the New York State Constitution. (See Compl. ¶¶ 38–41.) The conclusions reached above, (at 6–12), also apply to Plaintiffs' state law claims. "Neither party suggests that the treatment of [Plaintiffs'] free speech claim is any different under the state constitution, . . . and courts have concluded that the same analysis applies to such claims." Anemone v. Metro. Transp. Auth., 410 F. Supp. 2d 255, 267–68 (S.D.N.Y. 2006) (citing Hanig v. Yorktown Cent. Sch. Dist., 384 F. Supp. 2d 710, 722 n.10 (S.D.N.Y. 2005)).

**Collective Bargaining Process**

In view of the fact that the Collective Bargaining Agreement contains provisions for the PSC's use of LCC's meeting facilities, mailroom facilities, and bulletin boards, among other things, (see Schaffer Decl., Ex. 1 at art. 7, secs. 1–3), it would seem appropriate that Plaintiffs utilize the collective bargaining process to pursue their claim that they also should have the right to use LCC's email system. Defendants appear willing to negotiate over such provision in the (next) collective bargaining agreement. (See Schaffer Decl. ¶ 6 ("CUNY . . . would be willing to consider [such] a demand by the union in the next round of collective bargaining.").) "[J]udicial remedies (including injunctions) are generally not available where the parties have agreed to a

final and binding alternative method of dispute resolution, typically arbitration." Aeronautical Indus. Dist. Lodge 91 v. United Techs. Corp., 230 F.3d 569, 580 (2d Cir. 2000); see also Mic-Ron Gen. Contractors, Inc. v. Trs. of the New York City Dist. Council of Carpenters Benefit Funds, 908 F. Supp. 208, 211 (S.D.N.Y. 1995) ("[T]here is a presumption of arbitrability of disputes arising out of a collective bargaining agreement.").

## IV. Conclusion and Order

For the reasons set forth above, Plaintiffs' motion for a temporary restraining order and preliminary injunction [# 2] is respectfully denied.

The parties are directed to appear at a case management scheduling conference with the Court on December 21, 2007 at 10:30 a.m. in Courtroom 21D at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York.

**The Court directs the parties to engage in good faith settlement negotiations prior to the conference.**

Dated: New York, New York
December 13, 2007

RMB

**RICHARD M. BERMAN, U.S.D.J.**